IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § § § | |
| v. | § | 1:19-CR-0090-RP |
| GARY BROOKS, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Defendant Gary Brooks's ("Brooks") motion to suppress evidence from use in a revocation hearing, (Dkt. 103). The United States of America (the "Government") filed a response, (Dkt. 104), and the Court held an evidentiary hearing on June 23, 2023. The Government filed a supplemental response, (Dkt.108), and Brooks filed an objection seeking to strike the Government's supplemental filing, (Dkt. 109). Having considered the briefing, the arguments made at the hearing, the evidence, and the relevant law, the Court will overrule Brooks's objection and deny the motion to suppress.

## I. BACKGROUND

On June 10, 2022, this Court sentenced Brooks to a three-year term of supervised release after he pled guilty to one count of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). (Judgment, Dkt. 81). The terms of Brooks's supervised release require his ongoing compliance with various conditions. On April 6, 2023, the United States Probation Office (the "USPO") filed a "Petition for Warrant or Summons for Offender Under Supervision," (Dkt. 88),

seeking to revoke Brooks's supervised release status based on alleged violations stemming from Brooks's March 26, 2023, arrest by the Bastrop County Sheriff's Office ("BCSO").[1]

The arresting officer, BCSO Deputy T. Consentino, attested to the following facts concerning Brooks's arrest. On March 26, 2023, Dep. Consentino observed Brooks's Mercury Sable traveling with a "cracked front windshield" near the intersection of FM 20 and Shiloh Road in Bastrop County, Texas. (Gov't's Resp., Exhibit 6 ("Consentino Affidavit"), Dkt. 104-3, at 1). He initiated a traffic stop to investigate a potential violation for "Obstruction of Operators View." (*Id.*). Dep. Consentino pulled behind Brooks's vehicle and activated his emergency lights and siren, but Brooks continued driving eastbound on Shiloh Road approximately .2 miles before turning into a residential driveway. (*Id.*). After Brooks parked his vehicle, Dep. Consentino placed him in custody for attempting to flee a police officer. (*Id.* at 2). Dep. Consentino then observed "in plain view" a plastic baggie in the cup holder of Brooks's vehicle containing a white substance, which later field-tested positive for cocaine. (*Id.*). While searching Brooks's vehicle, Dep. Consentino also discovered a loaded Glock 23 handgun wedged between the driver seat and center console. (*Id.*). Based on these events, Brooks was arrested without a warrant and charged with fleeing or attempting to elude a police officer, possession of a controlled substance with intent to deliver (3.7 grams of crack cocaine), and unlawful possession of a firearm by a felon.

---

[1] On June 14, 2023, the USPO filed an Amended Petition for Warrant or Summons, which is substantively similar to the original petition. (Dkt. 101). Specifically, the USPO alleges that Brooks violated Mandatory Condition No. 1 (defendant shall not commit another federal, state, or local crime); Mandatory Condition No. 2 (defendant shall not unlawfully possess a controlled substance); Standard Condition No. 8 (defendant shall not communicate or interact with a convicted felon or person engaged in criminal activity); and Standard Condition No. 10 (defendant shall not own, possess, or have access to a firearm). (*Id.*).

On April 6, 2023, the Court approved the USPO's petition and issued a warrant for Brooks's arrest, (Dkt. 89). Following an initial appearance, United States Magistrate Judge Mark Lane ordered Brooks detained pending a final revocation hearing, (Order, Dkt. 93).

On June 19, 2023, Brooks filed a motion to suppress. (Mot., Dkt. 103). He seeks to exclude the weapon and contraband evidence seized by Dep. Consentino from use in the final revocation hearing, alleging they were obtained through an illegal search and harassment. (*Id.*) The Government filed its response on June 22, 2023. (Gov't's Resp., Dkt. 104). On June 23, 2023, the Court held an evidentiary hearing, at which Brooks presented testimony from one witness, Roger Henderson—a friend of Brooks who was present for a portion of the traffic stop. (Witness List, Dkt. 106). The Government called no witnesses. (*Id.*). Both parties introduced photographs of Brooks's windshield taken the day of the traffic stop, and the Government introduced the probable cause affidavits by Dep. Consentino. (Exhibit List, Dkt. 107). On June 29, 2023, the Government filed a supplemental response in opposition to Brooks's motion to suppress, attaching several new exhibits. (Supp. Resp., Dkt. 108). On July 10, 2023, Brooks filed an objection to the Government's supplemental response, requesting that the Court strike the post-hearing evidence as untimely. (Obj., Dkt. 109).

## II. LEGAL STANDARD

"[T]he exclusionary rule, absent a showing of harassment, does not apply to revocation of supervised release hearings." *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992). As the Fifth Circuit has explained, the value to society of safely reintegrating former prisoners outweighs whatever benefits might accrue from extending the exclusionary rule to supervised release revocation hearings that do not involve harassment. *Id.* Accordingly, a defendant seeking to suppress evidence from use in a revocation hearing must show, by a preponderance of evidence, that the evidence at issue was seized through police harassment. *Id.*

## III. DISCUSSION

### A. Brooks's Objection to the Government's Post-Hearing Evidence Is Overruled

The Court will first address Brooks's objection to the Government's supplemental response. Six days after the evidentiary hearing, the Government filed a supplemental response containing several new exhibits. (Dkt. 108). The new exhibits consist of: (1) three Bastrop County court orders dismissing Brooks's criminal charges, (Dkts. 108-1, 108-2, 108-3); (2) a court record and sheriff's report documenting the return of Brooks's keys and cell phone, (Dkts. 108-4, 108-5); and (3) a portion of body-camera video captured by BCSO supervisor Raymond Reyes at the scene of Brooks's traffic stop on March 26, 2023, (Dkt. 108-6). Brooks objects to this filing as an improper "attempt to present additional evidence and argument after the hearing was closed," (Obj., Dkt. 109, at 1). He contends that the Government has "no explanation for failing to present the evidence at the hearing," and that allowing new evidence at this juncture would offend due process by denying Brooks "the opportunity to present testimony, confront witnesses, [and] refute the newly presented evidence . . . ." (*Id.* at 1).

The Court will overrule Brooks's objection. First, even if the new exhibits were available, the Government's lack of readiness to submit them during the hearing is primarily Brooks's fault. The motion to suppress is based solely on the argument that "there is no law against a cracked windshield in Texas," and that, therefore, the traffic stop was "lacking in good faith and clearly based harassment." (Mot., Dkt. 103, at 2). At the evidentiary hearing, however, Brooks offered testimony from Mr. Henderson on several other alleged acts by police, including that Dep. Consentine "body-slammed" Brooks and that BCSO subsequently refused to return Brooks's personal effects. Brooks's counsel cited testimony on both these events as additional evidence of harassment. As the Government explains in its supplemental filing, this came as a "surprise" because

4

Brooks gave no indication beforehand that he planned to raise these topics. (Dkt. 108). Second, each of the new exhibits narrowly pertains to Henderson's testimony regarding the alleged "body slam" and BCSO's failure to return Brooks's personal effects upon the dismissal of his criminal charges. In fact, each of the documents and the body cam footage were referenced by Henderson, either directly or indirectly, during his testimony. Finally, Brooks does not contend that any of the exhibits—all court or police records—are unreliable, nor does he specifically explain how he would be prejudiced by their submission. Accordingly, the Court declines to strike the Government's post-hearing submission.

### B. Motion to Suppress

The Court next turns to the merits of Brooks's motion to suppress. Brooks presents several arguments purporting to show police harassment by BCSO. As noted, Brooks argues in his motion that the traffic stop was not justified at its inception because "there is no law against a cracked windshield in Texas," and, therefore, Dep. Consentino's stop of Brooks's vehicle was "lacking in good faith and clearly based harassment." (Mot., Dkt. 103, at 2). Additionally, at the evidentiary hearing Brooks presented witness testimony from Roger Henderson regarding other alleged actions taken by BCSO deputies before, during, and after Brooks's arrest. First, Mr. Henderson testified that Brooks was previously stopped by BCSO deputies in January 2023 and subjected to a vehicle search on the false pretext that his vehicle smelled of marijuana. Second, Mr. Henderson testified that Dep. Consentino used unnecessary force when arresting Brooks on March 26, 2023, by "throw[ing] him to the ground." Finally, Henderson testified that the BCSO "would not return Brooks' car keys" or cell phone after prosecutors dismissed the charges against him on May 16, 2023.

The Fifth Circuit has not specifically defined "harassment" for purposes of applying the exclusionary rule, but lower courts have used the term's ordinary meaning—*i.e.*, "to weary with

importunity, care, or perplexity," and "to wear, to fatigue to excess, to tire…" *United States v. James*, 893 F. Supp. 649 (E.D. Tex. July 31, 1995). Moreover, because "harassment is most often a repeated incident—an element of constancy should be present." *Id.* Finally, where harassment is alleged based on a singular act, "at least some irregularity in the conduct of the police officials must be present." *Id.*

Applying these principles, the Court finds that Brooks has failed to meet his burden to show the evidence at issue was seized through harassment. As an initial matter, the Court rejects Brooks's argument that Dep. Consentino's asserted basis for initiating the traffic stop—"a cracked windshield"—necessarily constitutes harassment. Brooks's premise that "there is no law against a cracked windshield in Texas" (Mot., Dkt. 103, at 2), is incorrect. Texas Transportation Code § 547.004(a)(1) provides that a person commits a misdemeanor offense by operating a vehicle that is "unsafe so as to endanger a person." A substantial crack in a windshield can violate this provision if it obstructs the driver's view to an extent that endangers the driver or others, and thus provide a reasonable suspicion to initiate a traffic stop. *United States v. Gaona-Gomez*, 2013 WL 3243619 *3 (S.D. Tex. June 26, 2013).

Here, there is no dispute that Brooks's window shield was cracked, but the parties disagree over its size and severity. The Government describes it as "fairly large crack that goes across the windshield in front of Mr. Brooks's driving area," (Tr. at 38:1-3), giving Dep. Consentino a clear basis to investigate. But this description is not supported by the parties' photograph evidence, which shows a barely visible crack located on the windshield's far passenger side. Based on a review of the photos, the Court is highly doubtful that the crack on Brooks's windshield can fairly be described as "substantial"—much less severe enough to obstruct the driver's view or endanger others. On the

other hand, it is not so minor to permit the Court to conclude that Dep. Consentino's traffic stop was "clearly based [in] harassment," as Brooks argues.

In any event, additional factors undermine the notion that Dep. Consentino's traffic stop was motivated by harassment. For one, Brooks was only stopped for the windshield crack on one occasion, so there is no evidence that police used the windshield as pretext in "an ongoing campaign" of harassment. *James*, 893 F. Supp. 649 (noting that harassment "is most often a repeated incident"). Nor is there clear evidence that Dep. Consentino was aware of Brooks's status as a supervisee. While an officer's prior knowledge of a defendant's supervisory status may not be a required showing, it is a central factor that may suggest a harassing motive. *See, e.g.*, *Montez*, 952 F.2d at 859 (noting that, in situations "where the agents knew that the one to be searched was on supervised release, the court must carefully review the agents' conduct to determine if harassment was involved."). At the hearing, Mr. Henderson initially testified that Dep. Consentino was aware of Brooks's supervised release status when he initiated the stop. (Tr. at 29:24-30:2). However, upon cross-examination, Henderson clarified that he based this understanding on comments allegedly made on scene by supervising officer Reyes, and he could not say for certain when officer Reyes arrived on scene. (Tr. 31:4-20). While Henderson generally testified that Brooks has a history of negative interactions with the BCSO in general, there is no non-hearsay evidence establishing that Dep. Consentino specifically knew that Brooks was on federal release at the time of the traffic stop. On balance, Brooks has not shown that the traffic stop was motivated by harassment.

The Court next turns to the other instances of alleged harassment described in Mr. Henderson's hearing testimony. First, Henderson testified that, in January 2023, he was riding as a passenger in Brooks's vehicle when the pair was stopped by a BCSO deputy. According to Henderson, the deputy initially told Brooks he had been pulled over because his middle brake light

was out, but the deputy soon informed Brooks he would need to search the vehicle because the car smelled of marijuana. According to Henderson, the car did not smell of marijuana—a fact Henderson says was later confirmed by a Bastrop City Police Department officer that arrived on scene. While this account describes a troubling interaction with police, it does not show that Brooks's March 26, 2023, arrest was motivated by harassment.[2] For one, Henderson did not identify the BCSO deputy involved, and there is no evidence that Dep. Consentino played any role in the earlier stop. Similarly, there is no evidence that the officer conducting the stop was aware of Brooks's supervisory status. Moreover, Henderson acknowledged that the officer had legitimate grounds to initiate the January 2023 traffic stop because Brooks's middle brake light was not working at the time.

Second, Henderson testified that Dep. Consentino used excessive force against Brooks during his March 26, 2023 arrest by "throwing him to the ground." However, Henderson acknowledged he did not personally observe this event and was not present when it occurred. Instead, Henderson testified that BCSO supervising officer Raymond Reyes told him that Brooks had been "body-slammed" by Dep. Consentino.[3] (Tr. at 12:12-23). Henderson claimed that he recorded this statement on his cell phone, but no cell phone video was submitted into evidence.[4] Even if the Court credited Henderson's hearsay testimony regarding Dep. Consentino's use of force, there is still no evidence that it was motivated by harassment as opposed to a legitimate safety concern. To the contrary, Dep. Consentino's affidavit states that Brooks initially disregarded his

---

[4] After the hearing, the Government submitted body camera footage of Officer Reyes, which depicts a conversation between Reyes and Mr. Henderson at the scene of the traffic stop but contains no reference to a "body slam" or other improper use of force. (Dkt. 108-6).

emergency lights and sirens. When Brooks finally parked his car, he "immediately exit[ed] the vehicle and began to yell" at the deputy. (Consentino Aff., Dkt. 104-3, at 1). Henderson's testimony about the alleged use of force does not support a finding of harassment.

Finally, Henderson testified that the BCSO refused to return Brooks's car keys, cell phone, and other personal effects, even after Bastrop County prosecutors dismissed the charges against him on May 16, 2023. According to Henderson, BCSO officers initially claimed they could not locate Brooks's property, and then only released the items later in response to a court order. But a police department's failure to timely return an arrestee's personal effects almost two months later has no bearing on whether evidence seized on March 26, 2023, was the result of harassment. Brooks cites no authority to the contrary.

In sum, Brooks articulates no repeated police acts of harassment or any evidence of acts by the police which were "to weary with importunity, care, or perplexity," and "to wear, to fatigue to excess, to tire." Because Brooks has not met his burden to prove police harassment, his motion must be denied.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Brooks's motion to suppress (Dkt. 103), is **DENIED**. The Court will schedule a final revocation hearing by separate order.

**SIGNED** on July 13, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE